# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>ROBERT L. COOPER,<br><br>Defendant. | Case No. 18-40071-01-DDC |

## MEMORANDUM AND ORDER

This matter comes before the court on defendant Robert L. Cooper's Motion to Dismiss Indictment (Doc. 22). Mr. Cooper has been charged with aggravated sexual abuse of his ex-wife's stepdaughter (hereinafter "JV1"). Mr. Cooper's motion asserts the court should dismiss his Indictment with prejudice because a grand jury witness presented false testimony, which the prosecutor did not correct. Fed. R. Crim. P. 12(b)(3)(A)(v). Specifically, Mr. Cooper contends, a grand jury witness incorrectly testified that the stepdaughter's Sexual Assault Forensic Exam indicated "some form of penetration." The government concedes that the exam did not reveal any evidence of penetration. Mr. Cooper thus seeks dismissal of his Indictment.

The government has filed a Response (Doc. 23). And the court conducted a hearing with the parties on June 3, 2019. For the reasons explained below, the court grants Mr. Cooper's motion in part and denies it in part. The court dismisses Mr. Cooper's Indictment, but the dismissal is without prejudice.

## I.   Facts

Mr. Cooper married Megan Browning, a solider stationed at Fort Riley. Mr. Cooper moved into Ms. Browning's home on Fort Riley, where Ms. Browning's three daughters from a

prior marriage also lived.  In October 2015, Ms. Browning was deployed to Kuwait, and she left her daughters in Mr. Cooper's care.  During the weekend of February 26 to 28, 2016, Mr. Cooper allegedly rubbed the breasts of the older stepdaughter, JV1, and allegedly sexually penetrated JV1 with his finger.

In June 2016, Ms. Browning returned home to Fort Riley.  Mr. Cooper moved out in August 2016, and he and Ms. Browning then divorced in July 2017.  Shortly after the divorce, JV1 purportedly told Ms. Browning about Mr. Cooper's alleged abuse.  Ms. Browning reported the incident to law enforcement, and, on August 17, 2017, JV1 underwent a Sexual Assault Forensic Exam.  The exam revealed no evidence of penetration.

On August 29, 2018, the government empaneled a grand jury.  The grand jury heard testimony from Jeremiah Griffin.[1]  Agent Griffin is a team chief with the Special Victims Team at Fort Riley Criminal Investigator Division of the U.S. Army.  Relevant to Mr. Cooper's motion is this exchange during the grand jury proceedings:

> **Grand Juror:**  You say [JV1] was examined by a physician?
>
> **The Witness [Agent Griffin]:**  Yes, she was.
>
> **Grand Juror:**  And when did that occur?  And also what were the results?
>
> **The Witness [Agent Griffin]:**  The results were indicative of some form of penetrative—some form of penetration.
>
> **Ms. Graham [Special Assistant United States Attorney]:**  But that exam would have occurred after the disclosure?
>
> **The Witness [Agent Griffin]:**  Yes, it did.
>
> **Ms. Graham [Special Assistant United States Attorney]:**  Which would have been after July 2017.  It would have been within that month.

---

[1] Defendant's motion refers to the witness "Jeremiah Griffith."

>**Grand Juror:** Okay.

The same day—August 29, 2018—the grand jury indicted Mr. Cooper on two counts of aggravated sexual abuse. The indictment charged Mr. Cooper with "knowingly engag[ing] and attempt[ing] to engage in a sexual act, with JV1 . . . by inserting his finger in JV1's vagina, by the use of force against JV1." Doc. 1 at 2–3.

On May 6, 2019—four days before the original motions deadline in the case—the government provided Mr. Cooper's counsel with a transcript of Agent Griffin's testimony. Also, the government advised defense counsel:

> [I]n contemplation of a plea, we need to disclose that the Government witness misstated the results of the victim's physical examination. The agent, not involved in the original investigations, testified that the SANE examination revealed evidence of penetration, which it did not. Our plan to cure this error is to present a superseding indictment to a new Grand Jury, the first week of June, to include both of these charges and the additional charge of Abusive Sexual Contact, should this case proceed to trial.

## II. Legal Analysis

When a defendant asserts error in a grand jury proceeding, the Tenth Circuit considers whether the asserted error falls into one of two categories. The first category is a technical (or procedural) error, which affects "only the grand jury's finding of probable cause." *United States v. Moya-Breton*, 329 F. App'x 839, 844 (10th Cir. 2009) (citing *United States v. Lopez-Gutierrez*, 83 F.3d 1235, 1244 (10th Cir. 1996)). The second category is an error that "threaten[s] the defendant's right to fundamental fairness in the criminal process." *Id.* (quoting *Lopez-Gutierrez*, 83 F.3d at 1244).

For the second category—fundamental fairness errors—the defendant must show the alleged error "substantially influenced the grand jury's decision to indict, or . . . there is a grave

doubt that the decision to indict was free from the substantial influence of such violations." *Id.* (quoting *Bank of Nova Scotia v. United States*, 487 U.S. 250, 256 (1988)). The Supreme Court has explained that the defendant must make this showing—*i.e.*, prejudice—to comport with the harmless error inquiry prescribed by Federal Rule of Criminal Procedure 52(a), which provides that "[a]ny error, defect, irregularity, or variance which does not affect substantial rights shall be disregarded." In short, a court that dismisses an indictment without finding prejudice violates Rule 52 because "federal courts have no more discretion to disregard the Rule's mandate than they do to disregard constitutional or statutory provisions." *Bank of Nova Scotia*, 487 U.S. at 255. The Tenth Circuit has provided a few examples of "[c]onduct that might properly be characterized as transgressing a defendant's right to fundamental fairness," including "an attempt by the government to unfairly sway the grand jury, or a pervasive attempt to charge without cause or to undermine the defense." *Moya-Breton*, 329 F. App'x at 844 (quoting *Lopez-Gutierrez*, 83 F.3d at 1245).

For example, in *United States v. Lopez-Gutierrez*, 83 F.3d 1235 (10th Cir. 1996), defendant argued on appeal that the district court had erred in denying his motion to dismiss indictment because "the government [had] failed to correct false evidence presented to the grand jury." *Id.* at 1244. Defendant claimed that a special agent, during the grand jury proceeding, had testified that defendant had been convicted of two separate drug offenses previously when, in fact, defendant had been convicted of just one drug offense. *Id.* at 1245. The special agent testified under oath that he had based his grand jury testimony on a conversation with another detective. *Id.* And, the special agent testified that he did not realize the error until a week before the trial when he received authenticated copies of defendant's criminal record. *Id.*

4

The Tenth Circuit found no evidence suggesting the special agent's grand jury testimony was "deliberately false." *Id.* As the Circuit explained, "[n]othing in the record suggests that [the special agent] intended to unfairly sway the jury or undermine . . . the defense. [The agent] was merely mistaken, and the statements were at most technically inaccurate and had the potential of affecting only the grand jury's finding of probable cause." *Id.* The Circuit thus concluded that the government had not engaged in prosecutorial misconduct necessitating dismissal of defendant's indictment. *Id.*

Likewise, in *United States v. Crockett*, 435 F.3d 1305 (10th Cir. 2006), defendant asserted a grand jury witness had committed perjury by misrepresenting how defendant had planned to avoid IRS detection when he brought funds back to the United States from an offshore account. *Crockett*, 435 F.3d at 1316. The Tenth Circuit held that defendant had failed to establish that the witness had uttered a false statement. *Id.* But, even if the statement was false, defendant had "failed to demonstrate any deliberate attempt by the prosecution to unfairly sway the grand jury." *Id.* The Circuit cited *Lopez-Gutierrez* for the proposition that "[w]here we have called admittedly false statements 'technical,' we have affirmed the district court's denial of a motion to dismiss the indictment when a defendant failed to establish that false statements before a grand jury were deliberate." *Id.*

The common thread in these cases is that they require a showing the government deliberately attempted to influence the grand jury with false testimony. *Doran v. Stratton*, 930 F.2d 33, 1991 WL 35249, at *2 (10th Cir. 1991) ("[I]t is undisputed that neither the prosecution nor [the witness] were aware this testimony was false at the time it was given."); *United States v. Cavallo*, 790 F.3d 1202, 1219 (11th Cir. 2015) ("As a general matter, to establish prosecutorial misconduct for the use of false testimony, a defendant must show that the prosecutor knowingly

used perjured testimony or failed to correct what he subsequently learned was false testimony, and that the falsehood was material."); *United States v. Mohawk*, 20 F.3d 1480, 1483 (9th Cir. 1994) ("Nothing in the record before us suggests that the officer knowingly gave or the prosecution knowingly used false testimony before the grand jury."). In this case, the government has conceded that Agent Griffin's statement was false. And, Mr. Cooper contends that the government deliberately attempted to sway the grand jury because the government had access to JV1's medical exam before the grand jury and failed to correct Agent Griffin's false statement.

The government responds, contending Agent Griffin's misstatement was inadvertent. Specifically, Agent Griffin testified based on a different case agent's report. And Agent Griffin did not have the results of the medical exam with him at the grand jury proceedings. Although the government conceded at the hearing that the medical exam had been reviewed several months before the grand jury, the government also asserts that it did not discover the discrepancy until months after the grand jury proceeding. When it discovered the discrepancy, the government offered to seek a superseding indictment if the case proceeded to trial. But, the government changed course at the hearing, instead expressing a "wait-and-see" approach.

In support of his position, Mr. Cooper directs the court to *United States v. Battle*, No. 00-3477-SAC, 2002 WL 31929253, at *2 (D. Kan. Oct. 24, 2002), where the defendant challenged his indictment after an investigator's testimony given at the grand jury was found to be false—*i.e.*, an investigator testified that the defendant had been involved in a kidnapping when the defendant was, in fact, in prison when the kidnapping occurred. *Id.* at *1–2. Judge Crow concluded "no evidence suggest[ed] that [the] falsity [of the investigator's testimony] was intentional or that the prosecutor knew [the testimony] was false." *Id.* at *2. When considering

6

whether the prosecutor knew the information was false, the court noted that the prosecutor did not have the defendant's rap sheet at the time of the grand jury testimony—instead, "it appear[ed] that the prosecutor did not learn until a revised PSR was issued that defendant had been incarcerated at the time of the kidnapping." *Id.*

In contrast, here the government did have access to JV1's medical report during Agent Griffin's testimony. The medical exam occurred on August 17, 2017, and the witness did not testify before the grand jury until August 2018. So, unlike *Battle*, the prosecution had access to—and actually had reviewed—the conflicting record before the grand jury appearance. And, after Agent Griffin made the false statement, the prosecution did not correct his testimony during the grand jury proceedings. *Cf. Goodrich v. Hall*, 448 F.3d 45, 50 (1st Cir. 2006) (declining to dismiss indictment when, after witness made false statement, the prosecutor interceded and instructed the grand jurors to disregard the information).

The government also contends that Mr. Cooper was not prejudiced by the false statement. To that end, Agent Griffin testified that JVI reported a sexual incident between her and Mr. Cooper where Mr. Cooper had touched her inappropriately.[2] Agent Griffin also testified that JV1 reported that Mr. Cooper—on two occasions over one weekend—had touched her breasts and inserted his fingers into her vagina.

Although these portions of Agent Griffin's testimony might support a finding of no prejudice, the court is left with doubt whether the grand jury's decision to indict was free from the alleged misconduct. The grand jury indicted Mr. Cooper on two counts of aggravated sexual abuse. The Indictment charged that Mr. Cooper "knowingly engaged and attempted to engage in a sexual act, with JV1 . . . by inserting his finger in JV1's vagina, by the use of force against

---

[2] A transcript of the grand jury proceedings was admitted as evidence at the hearing on June 3, 2019. Doc. 24-1 at 1.

JV1." Doc. 1 at 2–3. Agent Griffin's statement that the medical exam, which occurred more than a year after the incident, showed evidence of penetration goes directly to an element of aggravated sexual abuse—*i.e.*, "knowingly caus[ing] another person to engage in a sexual act . . . by using force against that other person." 18 U.S.C. § 2241(a), (c). The grand jurors also heard this statement at the end of Agent Griffin's testimony. Taken together, the court concludes that Mr. Cooper has raised sufficiently grave doubt whether the grand jury's decision was free from Agent Griffin's uncorrected false statement.

The court finds both issues—whether the government knowingly failed to correct false testimony and whether the false testimony prejudiced Mr. Cooper—to require close calls. So, out of an abundance of caution, the court dismisses the Indictment **without prejudice**.

This leaves Mr. Cooper's motion requesting that the court dismiss his indictment with prejudice. The court denies this aspect of the motion, and it is not a close call. "[D]ismissal without prejudice is ordinarily the appropriate remedy for prejudicial prosecutorial misconduct during grand jury proceedings." *United States v. Slough*, 679 F. Supp. 2d 55, 61 (D.D.C. 2010) (collecting cases). The government has conceded it made a mistake when it failed to correct Agent Griffin's testimony. And the government already has suggested returning to the grand jury to correct the error. The court sees no reason to dismiss with prejudice in light of the Supreme Court's direction in *Bank of Nova Scotia*: "deterrence is an inappropriate basis for reversal where means more narrowly tailored to deter objectionable prosecutorial conduct are available." 487 U.S. at 255. The court thus grants in part Mr. Cooper's Motion to Dismiss Indictment (Doc. 22) without prejudice.

### III. Conclusion

For the reasons explained, the court grants in part Mr. Cooper's Motion to Dismiss Indictment (Doc. 22). The dismissal is without prejudice.

**IT IS THEREFORE ORDERED BY THE COURT THAT** defendant Robert L. Cooper's Motion to Dismiss Indictment (Doc. 22) is granted in part. The dismissal is without prejudice.

**IT IS SO ORDERED.**

**Dated this 19th day of June, 2019, at Kansas City, Kansas.**

                                      **s/ Daniel D. Crabtree**
                                      **Daniel D. Crabtree**
                                      **United States District Judge**